United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORA LEE, Plaintiff, v. DANAHER CORPORATION, Defendant. | Case No. 25-cv-04107-TSH<br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION *IN LIMINE***<br>Re: Dkt. No. 20 |

Plaintiff Flora Lee served as Director of Workday in Danaher's Human Resources department from January 24, 2022 until she was terminated exactly two years later. Complaint ¶¶ 13, 39 (ECF No. 1-1). She has sued Danaher for eight causes of action arising under California law. *Id*. ¶¶ 44-109. Toward the end of her time at the company, Lee used her personal cellphone to take pictures of emails and other documents that were displayed on the screen of her work laptop computer. Danaher contends that 207 pages of those pictures are attorney-client privileged, and it seeks to bar Lee from using them for any purpose in this lawsuit. Lee agrees that certain of those pages are privileged but disputes the remainder, and she also invokes the crime-fraud exception.[1] The Court has reviewed the 207 pages *in camera*. For the reasons explained below, Danaher's motion is **GRANTED IN PART AND DENIED IN PART**.

## A. Legal Standard

Because Lee's claims all arise under California law, California's law on attorney-client privilege applies. Fed. R. Evid. 501. Under California law, "'confidential communication between client and lawyer' means information transmitted between a client and his or her lawyer

[1] Lee's invocation of the crime-fraud exception has no merit at all, and the Court gives it no further discussion.

in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." Cal. Evid. Code § 952. "[T]he client . . . has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer if the privilege is claimed by . . . [t]he holder of the privilege," Cal. Evid. Code § 954, which here is Danaher.

"The attorney-client privilege has been a hallmark of Anglo-American jurisprudence for almost 400 years." *Mitchell v. Superior Court*, 37 Cal. 3d 591, 599 (1984). "[T]he fundamental purpose behind the privilege is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters." *Id*. "Although exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature of this state has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship." *Id*.

"The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material." *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 734 (2009). "[T]he privilege covers the transmission of documents which are available to the public, and not merely information in the sole possession of the attorney or client. In this regard, it is the actual fact of the transmission which merits protection, since discovery of the transmission of specific public documents might very well reveal the transmitter's intended strategy." *Mitchell*, 37 Cal. 3d at 600. "Neither the statutes articulating the attorney-client privilege nor the cases which have interpreted it make any differentiation between 'factual' and 'legal' information." *Id*. at 601.

"[T]he statements of a corporate employee to the corporation's attorney are not privileged if the employee speaks as an independent witness, even if the employer requires the employee to make the statement." *Costco*, 47 Cal. 4th at 734. "In that context, the dominant-purpose test

determines whether the relationship between the attorney and the corporate employee is an attorney-client relationship; if the corporation's dominant purpose in requiring the employee to make a statement is the confidential transmittal to the corporation's attorney of information emanating from the corporation, the communication is privileged." *Id*. at 735.

Under California law, privilege is not limited to communications directly between employees and attorneys. Recall that "confidential communications between client and lawyer" include "those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted," Cal. Evid. Code § 952.

"[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). "In the corporate context . . . it will frequently be employees beyond the control group as defined by the court below–'officers and agents ... responsible for directing [the company's] actions in response to legal advice'–who will possess the information needed by the corporation's lawyers." *Id*. at 391. "Middle–level—and indeed lower–level—employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." *Id*.

"We reject any suggestion that the scope of the privilege should be diluted in the context of in-house counsel and their corporate clients. Members of corporate legal departments are as fully subject to the demands of the privilege as their outside colleagues." *General Dynamics Corp. v. Superior Court*, 7 Cal. 4th 1164, 1190 (1994).

Under California law, the privilege is protected by statute. "What courts in other jurisdictions give as common law privileges they may take away as exceptions. We, in contrast, do not enjoy the freedom to restrict California's statutory attorney-client privilege based on notions of policy or ad hoc justification." *Wells Fargo Bank v. Superior Court*, 22 Cal. 4th 201, 209 (2000). "[W]here the elements of a wrongful discharge in violation of fundamental public policy claim cannot, for reasons peculiar to the particular case, be fully established without

United States District Court
Northern District of California

breaching the attorney-client privilege, the suit must be dismissed in the interest of preserving the privilege." *General Dynamics*, 7 Cal. 4th at 1190.

"As a general matter, the power to assert and waive the attorney-client privilege held by a corporation belongs to corporate management and is normally exercised by the corporation's officers and directors." *Melendez v. Superior Court*, 215 Cal. App. 4th 1343, 1353-54 (2013).

**B. What Is in Dispute**

Defendant organizes the 207 pages at issue into 19 groups. Motion at 6-8. Group 12 has a typo in it (saying 671-668 when it means 671-678), and some of the groups overlap. Defendant has confirmed that it claims privilege over pages LEE 1-19, 21-28, 30-36, 38-42, 211-226, 228-257, 315-324, 338-366, 385-394, 650-695, 717-741 and 766. ECF No. 27.

Plaintiff organizes the documents, or at least most of them, into 86 groups. Plaintiff says that certain documents in groups 21, 24, 25, 26, 27, 28, 35, 37, 38, 39, 44, 54, 55, 57, 58, 59, 60, 61, 62, 64, 65, 79, 80, and 81 are privileged. Opp. at 5. Those are: LEE 32 top, 34, 35 top, 35 bottom, 36 top, 36 bottom, 241, 242 bottom, 244 through 246 top, 248 bottom, 250, 251, 252, 253, 256, 257, 341 top, 347 bottom, 348 top, 348 bottom, 350, 351 top, 351 bottom, 352 top, 352 bottom, 353 top, 353 bottom, 354 top, 355, 356 top, 661 top, 661 bottom, 668 top, 669, 672 through 674 top, 676 bottom, 679, 680, 681, 684, 685, 726, 727, 729, 733 top, 734 bottom, 735 top, 735 bottom, 736, 737 bottom, 738, 739 top and 739 bottom. ECF No. 27.

**C. Discussion**

Defendant organizes the 207 pages at issue into 19 groups. Motion at 6-8. The attorneys at issue are Patricia Kim (Vice President & Chief Counsel, Labor & Employment), Andrew Heaton (Lead Counsel, Global Data Privacy), Joseph Bernasky (Lead Counsel, U.S. Labor & Employment), and Samuel Sverdlov (Senior Counsel, U.S. Labor & Employment). The documents at issue all relate to a data privacy project and to revisions to Danaher's I-9 compliance process. The Court addresses the 19 groups in turn.

**1. LEE 1-2, 12, 13, 16, 19, 38-40, 211-221, 315-316, 686-687**

These documents are emails concerning a data privacy project. The emails are mostly between Lee and her then-supervisor Georgeann Couchara, Senior Vice President of Human

Resources. A few of the emails include other people, such as Susan Surber, Marietta Carter, Leah Avery and Adam Haverson. None of these people are attorneys. The emails are very repetitive, with multiple pictures of the same email threads. They generally relate to a data privacy project put in operation by counsel to address legal risk.

Some of the emails reveal information elsewhere transmitted between Danaher and its in-house counsel in the course of that attorney-client relationship. In other words, that transmission occurred *in a different communication*, but some of the information transmitted is repeated in these emails. Because the non-lawyers on these emails are working on the data privacy project, they are people "to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted," Cal. Evid. Code § 952.

Danaher's claim that the entirety of these emails is privileged reflects a basic misunderstanding of privilege. As discussed above, the first step is to look at the attorney-client communication. We apply the dominant purpose test and inquire whether the relationship between the attorney and the corporate employee is an attorney-client relationship. For the documents in this group, we don't have those communications. But from what is repeated in these documents, we can easily infer that the dominant purpose test (as applied to the attorney-client communications not before us) is satisfied. That means that the entirety of *those* attorney-client communications are privileged, and we don't distinguish legal advice from factual information, or isolate the portions of those communications that have privileged versus unprivileged content. The whole of those communications are privileged.

But again, that's not what we're looking at here. These emails are not attorney-client communications. Privilege attaches only to the portions of these emails that repeat information transmitted in the attorney-client communications. References to Lee gaining alignment and support from counsel, and the content of that alignment, are privileged. What privacy counsel shared, or potential legal risks they identified, is privileged. Maybe there are a couple of other things in these documents that are privileged.

However, the large majority of what is in group 1 is not privileged. Look, corporate

projects have to be implemented. They need budgets, deadlines, agendas, next steps, and so on. And legal projects need that too. Just because the project addresses legal concerns or is driven by the legal department doesn't mean that privilege descends "like a giant fog bank over every document that is in some way connected with an effort to achieve legal compliance." *Epic Games, Inc. v. Apple Inc.*, 2024 WL 4947269, *1 (N.D. Cal. Dec. 2, 2024).

The Court declines to rule definitively on the privileged status of every sentence of each document in group 1. Danaher's sweeping claim of privilege is wrong and is **OVERRULED**. The Court **ORDERS** Danaher to resubmit group 1 with proposed redactions of privileged material, consistent with the above discussion.

**2. LEE 3-19, 21-28, 41, 42, 316-324, 688-695**

The Court's guidance with respect to group 1 applies equally to group 2. Danaher's sweeping claim of privilege is **OVERRULED**. The Court **ORDERS** Danaher to resubmit group 2 with proposed redactions of privileged material, consistent with the above discussion.

**3. LEE 30-31**

LEE 30 is attorney-client communications, and Danaher's claim of privilege is **SUSTAINED**. If LEE 31 (bottom) is fact-gathering for the purpose of providing the information to counsel (meaning that Lee is a conduit to counsel), then it's privileged. But if that's not what it is, it's not privileged. Defendant has the burden to show that a document is privileged. The Court cannot tell from looking at LEE 31 (bottom) whether it is privileged or not, and Defendant provides no document-specific information to show that it is privileged. Accordingly, Defendant's claim of privilege over LEE 31 (bottom) is **OVERRULED**.

In LEE 31 (top), the email from Lee to Veronica Moore Cardona is not privileged, but the email from Samuel Sverdlov (that Lee forwards) is.

**4. LEE 32-33, 241-246, 251-257, 669-671, 679-685, 738-740**

In this group, Lee agrees that LEE 32 (top), 241, 242 (bottom), 244, 245, 246 (top), 251, 252, 253, 256, 257, 669, 679, 680, 681, 684, 685, 738 and 739 are privileged. That leaves LEE 32 (bottom), 33, 242 (top), 243, 246 (bottom), 254, 255, 670, 671, 682, 683 and 740 in dispute.

LEE 32 (bottom) is privileged. It is an attorney-client communication between Lee and

United States District Court
Northern District of California

Samuel Sverdlov. To be sure, the email exchange is partially obscured by the call out of Sverdlov's contact information, but it's still privileged. Also, LEE 33 (bottom) is the same as LEE 32 (bottom) without the contact information obscuring part of the communication, and it is clearly a privileged communication. Similarly, LEE 33 (top) is a privileged attorney-client communication, as are LEE 254, 682 and 740.

In her opposition brief, Plaintiff argues that in the time period of these emails, she was not seeking legal advice from attorneys, but was instead a whistleblower reporting a lack of compliance. However, nothing about these communications reads that way. These are ordinary attorney-client communications.

The Court can't tell whether LEE 242 (top) is privileged or not because the relevant information about the "WD I9 Solution Deployment" document is not provided (for example, whether it was an attachment to an attorney-client communication), and the content in the short segments from that document that have been provided does not necessarily suggest privilege. As the claimant asserting privilege, Danaher has the burden to substantiate that claim, and it failed to do so. For the same reason, the Court finds that Danaher has failed to show that LEE 243, 246 (bottom), 255, 670, 671 and 683 are privileged.

**5. LEE 34-36**

Lee agrees these documents are privileged.

**6. LEE 222-226, 650-654**

These documents are two copies of I9 survey results. The document was prepared by Cytiva, a Danaher operating company. The survey addresses compliance issues. Danaher has not carried its burden to show that this document is privileged. Danaher asserts that this PowerPoint reflects legal advice, but no information is provided to show that attorneys wrote this document. Most of the document reads like something prepared by a consultant. Danaher states that this document was prepared by the I-9 coordinator at Cytiva, and that is someone who works in HR (as we see in group 7). If this document isn't an attorney giving legal advice to a client, could it be a client gathering factual information and asking questions to an attorney? It doesn't seem like it. The slide deck ends by discussing build design, testing and rollout, with the rollout slide asking:

United States District Court
Northern District of California

"If you are wanting to be part of the testing/first phase roll out, please let me know." This indicates the intended audience is the business side.

**7. LEE 228-232, 655-660**

LEE 228-232 and 656-660 are an email from Veronica Moore Cardona, the Cytiva HR coordinator, to a large group of people, attaching the results of a second I9 compliance survey. LEE 655 is an email from Cardona to Lee, attaching an analysis document (which is not included in this group) that appears to be a summary of the survey results.

Danaher has not carried its burden to show that these documents are privileged. Indeed, Danaher has not shown that attorneys had any involvement at all in these documents. Danaher asserts that the survey was sent to Danaher operating companies I-9 coordinators, meaning it was a survey of HR employees. And Danaher says that the results were shared with participants and leadership teams. Lawyers do not appear to be the authors or the primary recipients of the survey and its results.

**8. LEE 233, 661**

Lee agrees that LEE 661 is privileged. LEE 233 (bottom) is privileged because it is an attorney-client communication. The email from Lee to Cardona in LEE 233 (top) is not privileged, but the email from Sverdlov that she is forwarding is privileged.

**9. LEE 234, 662, 741**

These are three copies of the same email. Kerie Rogers' email to Lee is mostly not privileged, except that the sentence beginning "Looks like" is privileged. Karen Casey's email to Rogers is privileged in its entirety.

**10. LEE 235-238, 663-666**

These documents are the HR Project Intake Proposal for the data privacy project. They are not privileged. This is the business implementation of the data privacy project. It is a way to manage a project and does not contain attorney-client communications. It is not true that every reference to a legal problem or to legal compliance is a lawyer talking; HR personnel talk about things like that too, and that is what is occurring in the "Problem Statement/Purpose" section of the form.

United States District Court
Northern District of California

**11. LEE 239-240, 667-668, 732-737**

Lee agrees that LEE 668 (top), 733 (top), 734 (bottom), 735, 736 and 737 (bottom) are privileged. Thus, the dispute is over LEE 239-240, 667, 668 (bottom), 732, 733 (bottom), 734 (top) and 737 (top).

LEE 239 is privileged because it contains an attorney comment, and both the comment and what he was commenting on are privileged. Defendant has not shown that LEE 240 is privileged. Nothing about the content of that document necessarily suggests privilege, and Danaher does not add any extrinsic evidence that would show it is privileged.

These rulings also mean that LEE 667 is privileged, while LEE 668 (bottom), 732, 733 (bottom), 734 (top) and 737 (top) are not.

**12. LEE 246-250, 671-678**

Lee agrees that LEE 246 (top), 248 (bottom), 250, 672, 673, 674 (top) and 676 (bottom) are privileged. That leaves LEE 246 (bottom), 247, 248 (top), 249, 671, 674 (bottom), 675, 676 (top), 677 and 678 in dispute.

LEE 678 is privileged, but the remaining documents in dispute are not.

**13. LEE 338-356, 723-731**

Lee agrees that LEE 341 (top), 347 (bottom), 348, 350, 351, 352, 353, 354 (top), 355, 356 (top), 726, 727, 729 are privileged. Thus, LEE 338, 339, 340, 341 (bottom), 342, 343, 344, 345, 346, 347 (top), 349, 354 (bottom), 723, 724, 725, 728, 730 and 731 are in dispute.

This set of documents is similar to category 1. The documents are mostly about implementing a project to achieve legal compliance. That is not privileged. What's privileged are attorney-client communications, including the repetition of those communications in other emails. But privilege does not descend generally over a project just because its goal is legal compliance.

So, in LEE 338, the sentence that begins "She is working with Andy to . . ." is privileged because it repeats legal advice given elsewhere. But the rest of the document is not. The same ruling applies to LEE 724. Similarly, LEE 339 and 340 (top) are not privileged. In LEE 340 (bottom), the sentence beginning "@Heaton, Andrew" is privileged, but the remainder of the document is not. Though Heaton is cc'd on the email to Allermann, the predominant purpose of

United States District Court
Northern District of California

that email is business, not legal (again, except for the later direct inquiry to Heaton).

LEE 341 (bottom), 342, 343, 344, 345, 346, 347 (top), 349 and 354 (bottom) are not privileged. Copying a lawyer on a business discussion does not give rise to privilege. LEE 723, 725, 730 and 731 are not privileged. However, LEE 728 is privileged.

**14. LEE 341**

Lee agrees LEE 341 (top) is privileged. LEE 341 (bottom) is not privileged.

**15. LEE 355**

Lee agrees this document is privileged.

**16. LEE 356**

Lee agrees LEE 356 (top) is privileged. However, LEE 356 (bottom) is also privileged.

**17. LEE 357-366, 717-722**

None of these documents are privileged. They concern an action plan to achieve legal compliance. This is not privileged.

**18. LEE 385-394**

These documents are a pitch deck and related emails from Radiometer. None of this is privileged.

**19. LEE 766**

For reasons already explained, this document is not privileged.

**D. Next Steps**

For categories 1 and 2, the Court has determined that Danaher's claims of privilege are overbroad. The Court **ORDERS** Danaher to propose to Plaintiff narrowed privilege claims for categories 1 and 2 within 14 days. Thereafter, the parties shall meet and confer to determine if they can agree on narrower privilege claims. Within 28 days of this order, the parties shall file either a notice that they have resolved their dispute over categories 1 and 2, or a joint discovery letter brief setting forth their remaining disputes.

The Court also **ORDERS** the parties to meet and confer on whether the case schedule needs to be further adjusted. If they think it does, they shall file a stipulation and proposed order to that effect.

**E. Effect of Privilege Determination**

The Court's determination that a document or part of a document is privileged means that it cannot be used in the case. *See General Dynamics*, 7 Cal. 4th at 1190. The privileged material cannot be questioned about or testified about. It cannot be used for any purpose.

The Court also believes that any legal briefs that contain privileged information should be sealed and that a public version with the privilege information redacted should be filed. The Court **ORDERS** the parties to meet and confer to identify any legal briefs in this case that should be sealed and what items in them should be redacted in a public filing. Within 28 days the parties shall file either a stipulation and proposed order reflecting their agreement on what papers should be sealed, together with public, redacted versions of those papers, or a joint discovery letter brief setting forth their different positions.

Danaher asks the Court to order Lee to return the privileged documents. If Danaher had inadvertently produced these documents in discovery, that would be a logical remedy. However, what happened in this case is that Lee took these documents with her (via pictures on her cellphone) when she left the company. If your employee walks out the door with something that's yours – whether it's your privileged documents, your trade secrets, your office furniture, or anything else that is company property – the way to get it back is to sue them. (Or file a counterclaim against them.) And then you need to win that lawsuit. Here, Danaher is a defendant in an employment lawsuit brought by Lee, and the claims before the Court provide it no ability to order Lee to return things she should not have taken from her employer when she left.

**F. Conclusion**

Danaher's motion *in limine* is **GRANTED IN PART AND DENIED IN PART** as stated above.

**IT IS SO ORDERED.**

Dated: July 17, 2026

THOMAS S. HIXSON
United States Magistrate Judge